# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

CHRYSTAL ROBINSON,

        Plaintiff,

v

QUICKEN LOANS, INC.,

        Defendant.

_____

Case No. 2:19-cv-13129
Hon. Nancy G. Edmunds

**DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

CARLA D. AIKENS, P.C.
By:   Connor B. Gallagher (P82104)
615 Griswold St., Suite 709
Detroit, Michigan 48226
connor@aikenslawfirm.com
*Attorney for Plaintiff*

_____

BODMAN PLC
By:   John C. Cashen (P31603)
      Michelle L. Kolkmeyer (P81355)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
jcashen@bodmanlaw.com
mkolkmeyer@bodmanlaw.com
*Attorneys for Defendant*

## <u>DEFENDANT QUICKEN LOANS INC.'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant Quicken Loans Inc., moves this Court under Fed. R. Civ. P. 56 for entry of summary judgment as to all claims asserted by Plaintiff, Chrystal Robinson. For the reasons stated in the attached brief, Quicken Loans respectfully request that its motion be granted and judgment entered in its favor.

Pursuant to Local Rule 7.1, counsel for the Defendants sought Plaintiff's concurrence in the relief requested in this motion, but concurrence was not obtained.

Respectfully submitted,

BODMAN PLC

By:   /s/Michelle L. Kolkmeyer
        John C. Cashen (P31603)
        Michelle L. Kolkmeyer (P81355)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
jcashen@bodmanlaw.com
mkolkmeyer@bodmanlaw.com
*Attorneys for Defendant*

August 10, 2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

CHRYSTAL ROBINSON,

      Plaintiff,

v

QUICKEN LOANS, INC.,

      Defendant.

_____

Case No. 2:19-cv-13129
Hon. Nancy G. Edmunds

**DEFENDANT'S BRIEF IN
SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

CARLA D. AIKENS, P.C.
By:   Connor B. Gallagher (P82104)
615 Griswold St., Suite 709
Detroit, Michigan 48226
connor@aikenslawfirm.com
*Attorney for Plaintiff*

_____

BODMAN PLC
By:   John C. Cashen (P31603)
Michelle L. Kolkmeyer (P81355)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
jcashen@bodmanlaw.com
mkolkmeyer@bodmanlaw.com
*Attorneys for Defendant*

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................ ii

STATEMENT OF ISSUES PRESENTED ....................................................iv

INTRODUCTION ........................................................................................1

STATEMENT OF FACTS ............................................................................1

LAW AND ARGUMENT ..............................................................................7

I.      Standard of review.................................................................................7

II.     Quicken Loans did not discriminate against plaintiff. ..........................7

        A.     Plaintiff cannot establish a race discrimination claim. ...............8

        B.     Plaintiff cannot establish a gender discrimination claim. .........11

        C.     Plaintiff cannot establish an age discrimination claim. ............13

        D.     Quicken Loans terminated plaintiff for legitimate nondiscriminatory reasons. ......................................................15

        E.     Plaintiff cannot prove her hostile work environment claim...................................................................................16

        F.     Quicken Loans did not retaliate against plaintiff.....................18

        G.     Plaintiff's public policy claim is preempted by statute and therefore must be dismissed. ..............................................20

CONCLUSION.............................................................................................21

# INDEX OF AUTHORITIES

## <u>Cases</u>

*Abbott v. Crown Motor Co.*,
   348 F.3d 537 (6th Cir. 2003) ..............................................................................19

*Bobo v. United Parcel Service*,
   665 F.3d 741 (6th Cir. 2012) ..............................................................................13

*DiCarlo v. Potter*,
   358 F.3d 408 (6th Cir. 2004) ................................................................................8

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993)..............................................................................................17

*Humenny v. Genex Corp.*,
   390 F.3d 901 (6th Cir. 2004). ..................................................................... 8, 15

*Kimmelman v. Heather Downs Mgmt. Ltd.*,
   278 Mich. App. 569; 753 N.W.2d 265 (2008) ...................................................21

*Little v. BP Expl. & Oil Co.,*
   265 F.3d 357 (6th Cir. 2001) ..............................................................................20

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)............................................................................................14

*Mitchell v. Toledo Hosp.*,
   964 F.2d 577 (6th Cir. 1992) ..............................................................................10

*Nguyen v. City of Cleveland*,
   229 F.3d 559 (6th Cir. 2000) ..............................................................................19

*Nicholson v. City of Clarksville*,
   530 F. App'x 434 (6th Cir. 2013)........................................................................17

*Vagts v. Perry Drug Stores*,
   204 Mich. App. 481, 516 N.W.2d 102 (1994)....................................................21

## <u>Statutes</u>

Elliott-Larsen Civil Rights Act MCL 37.2101 et seq. .......................... 13, 18, 19, 20

Bodman_16871114_2

**<u>Federal Rules of Civil Procedure</u>**

Fed.R.Civ.P. 56(c)......................................................................................................6

## STATEMENT OF MOST CONTROLLING AUTHORITY

Elliott-Larsen Civil Rights Act,  MCL 37.2101 et seq

Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.

Fed.R.Civ.P 56

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

Bodman_16871114_2

## STATEMENT OF ISSUES PRESENTED

1.    Is Quicken Loans entitled to summary judgment on plaintiff's race discrimination claim where no discriminatory comments were made, there is no evidence of disparate treatment, her supervisor and ultimate decision maker is African American and she was replaced by an African American female?

Quicken Loans States: Yes

2.    Is Quicken Loans entitled to summary judgment on plaintiff's gender discrimination claim where no discriminatory comments were made, there is no evidence of disparate treatment, her supervisor and ultimate decision maker is a female, and she was replaced by a female?

Quicken Loans States: Yes

3.    Is Quicken Loans entitled to summary judgment on plaintiff's age discrimination claim where no discriminatory comments were made, there is no evidence of disparate treatment, plaintiff's, replacement was under forty years old, and plaintiff's claims are inconsistent and unsubstantiated?

Quicken Loans States: Yes

Bodman_16871114_2

4.    Is Quicken Loans entitled to summary judgment on plaintiff's hostile work environment claim where plaintiff's claims do not demonstrate any discriminatory conduct and her only allegations are that she was "dismissed" and that other employees were "treated more gently?"

Quicken Loans States: Yes

5.     Plaintiff never reported any discrimination to The Pulse (HR) and therefore did not engage in protected activity nor can she show any causal connection between her complaints to The Pulse and her ultimate termination. Is Quicken Loans therefore entitled to summary judgment on plaintiff's retaliation claim?

Quicken Loans States: Yes.

6.    Is Quicken Loans entitled to summary judgment on plaintiff's public policy claim where the Elliot Larsen Civil Rights Act and Title VII provide her with statutory recourse?

Quicken Loans States: Yes.

## INTRODUCTION

Plaintiff Chrystal Robinson, a business analyst whose fundamental job was to communicate, had major communication issues with her team. She joined a team of highly experienced software engineers and was demanding and abrasive, which negatively affected her team performance. When her team leader coached her on these issues, she was unreceptive to feedback. When her performance did not improve, her employment was terminated. Contrary to what plaintiff would have this Court believe, she was not subject to an unlawful hostile work environment. Defendant Quicken Loans did not terminate plaintiff because of her age, race, or gender. Nor did Quicken Loans retaliate against plaintiff for exercising protected activity. The reality is that Quicken Loans terminated plaintiff for a legitimate business reason: she was unsuccessful in her role. Plaintiff's allegations are riddled with inconsistencies and based on unsubstantiated conjecture. She cannot adduce any evidence that she was terminated for any discriminatory reason, subjected to a hostile work environment, or retaliated against. Accordingly, summary judgment is appropriate and this case should be dismissed with prejudice.

## STATEMENT OF FACTS

Plaintiff began working as an intern for defendant Quicken Loans, Inc. in October 2014 as an executive administrative assistant on the IT team. (Complaint,

ECF No. 1 ¶ 1; Ex. A, Schiefer Declaration ¶ 5.) Quicken Loans designed its internship program to be a stepping stone into regular placement within the organization. (Ex. A ¶ 4.) During her internship plaintiff began meeting with Bridget Schiefer, a leader on the IT team and a 46 year old African American female. (Ex. A ¶ 3, 5-6.) Schiefer mentored plaintiff and they discussed her future within the organization. (Ex. A at ¶ 6.) She described her relationship with Schiefer as "very positive" given the two had "a lot in common" especially around "women empowerment." (Ex. B, Robinson Dep. 53:2-13.) Plaintiff expressed her interest in continuing with the IT team but given her lack of technical experience she was unsure of which role. (Ex. A ¶ 7.) Plaintiff began considering a business analyst position, which operates as a liaison between the business side of the organization and the technical teams and does not require significant technical expertise. (Ex. A ¶ 8.)

In May 2015, plaintiff became a full time IT business analyst. (Ex. B; Ex. A ¶ 9.) Schiefer and plaintiff continued to meet and discuss women empowerment activities and work. (Ex. A ¶ 10.) During their conversations, plaintiff mentioned on more than one occasion that she was unhappy as a business analyst. (Ex. A ¶ 11.) Later, in October 2016, Quicken Loans reorganized the IT team and plaintiff was shifted to a business analyst on Schiefer's team. (Ex. A ¶ 12.) Schiefer welcomed her and committed to coaching her. (Ex. A ¶ 13.) However, plaintiff's

2

continued unhappiness in her role as a business analyst became readily apparent and began impacting her performance. (Ex. A ¶ 13.) She struggled to make it into the office and work full workdays, her follow-through on projects waned, and she became combative and unreceptive to any type of feedback. (Ex. A ¶ 13.) Although marked as "achieves expectations" in her annual 2017 review (Ex. C), Schiefer made the following clear:

> Grow in your current role.  Your title is a BA. Until we find a different career path for you, this is the time to really learn what being a BA means and growing in that role . . . Continue to work on your tone and body language.  You've made big strides in this area.  Don't stop now!

Plaintiff's attendance, however, continued to slip (including no-call/no-show) and she became increasingly unreliable to the point where some of her teammates stopped requesting her assistance. (Ex. A ¶ 14.)  In March 2018, Schiefer sat down with plaintiff to have a candid conversation about these issues and the need to improve. (Ex. A ¶ 15.) Understanding that many of these behaviors stemmed from the fact that plaintiff was unhappy in her role, Schiefer agreed to decrease her workload—without decreasing her pay—so that plaintiff could dedicate time to exploring other positions. (Ex. A ¶ 16.) Even with this accommodation, plaintiff remained unhappy. (Ex. A ¶ 17.) She had a meeting with two team relations specialists to voice her concerns with Schiefer's leadership. Plaintiff expressed to The Pulse (i.e., HR) that she told Schiefer that there were

3

men with worse demeanor problems than her. Plaintiff alleged that Schiefer responded "those men have proved their worth."  Plaintiff did not assert that she was being discriminated against because of her sex, and the alleged comment of Schiefer was not substantiated when investigated. At no time during that meeting with The Pulse did plaintiff mention race or age discrimination.

Plaintiff's work and behavior continued to suffer even with the reduced workload. (Ex. A ¶ 17.) Although her workload was reduced to assist her in identifying a new role, plaintiff neither applied nor interviewed for any other position within Quicken Loans. (Ex. A ¶ 17.) Consequently, Schiefer could no longer defend a reduced workload and directed plaintiff to refocus 100% of her time back on her work as a business analyst. (Ex. A ¶ 17.) On May 18, 2018, plaintiff was given a verbal warning for a number of concerns, including the quality of her work and failure to complete assigned tasks. (Ex. A ¶ 18; Ex. D.) Plaintiff did not agree with Schiefer's verbal warning.  She met with her team relations specialist in an attempt to have it removed.  At no time in that meeting with The Pulse did plaintiff allege any discrimination.

Plaintiff continued to struggle to perform her work and failed to accept or implement any type of constructive feedback. (Ex. A ¶ 19.) Because Quicken Loans did not see improvement, plaintiff was marked "needs improvement" in her

4

2018 mid-year review. (Ex. A ¶ 19; Ex. E.) In this review, her need to remain solution-focused was again noted:

> Please be mindful of your tone when being a champion of change.  If you would like the team to try something, or you see room for improvement, great.  But those things have to be delivered without a tone of blame or accusation.  It puts the Team on the defense and drowns out your points. (Ex. E).

Because of her "needs improvement" rating, plaintiff and Schiefer developed an action plan. (Ex. F.) Plaintiff was assigned a mentor. While she initially resisted, the mentor was ultimately put in place. (Ex. A ¶ 21.)

Plaintiff did not take the action plan or her mid-year review seriously. She continued to be abrasive, combative, and dismissive and not properly prioritize her work. Consequently, she received a written warning on August 31, 2018.  (Ex. A ¶ 17; Ex. G.) The written warning outlined these concerns and specific examples emphasizing the need to see immediate improvement. (Ex. G.) But plaintiff's non-compliant conduct continued. For example, on October 12, 2018, she sent a message to her team at 9:50 a.m. that she would be coming to the office late and later texted Schiefer that she was not coming in at all.  Schiefer messaged her around 2:30 p.m. to ask if she was okay, but received no response.  (Ex. H.)

Schiefer continued to assist plaintiff.  It is Quicken Loans' policy that a team member is not eligible to transfer to another role if they are not meeting expectations.  (Ex. A ¶ 22.) Schiefer, however, believed that a change of scenery

5

might improve plaintiff's performance. (Ex. A ¶ 22.) Thus, Schiefer deviated from protocol and endorsed plaintiff for a transfer to another team in October 2018. (Ex. A ¶ 22.) In conjunction with that endorsement, Schiefer asked for feedback from plaintiff's mentor. She then learned that plaintiff had not met with her mentor on a regular basis as requested and did not implement the advice provided. A recap of the mentor's feedback, in which she states that she does not believe the mentorship has been valued by plaintiff, is attached. (Ex. A ¶ 22; Ex. D)

Based on this feedback Schiefer and director Joe Brach met with plaintiff on October 16, 2018 to set expectations for her as a business analyst for a new team. (Ex. A ¶ 23.) Specifically, they emphasized the need for her to take her job seriously and work the full 8-hour workday, in the office, and warned her of arriving late and leaving early when there was work to be done. (Ex. A ¶ 23.) Plaintiff verbally acknowledged the message, left the meeting, went back to her desk for about 10 minutes, and then left early, walking right past Schiefer and Brach without saying a word. (Ex. A ¶ 23.). She had worked only approximately seven hours that day. (Ex. A ¶ 23.). This was the final act of blatant insubordination. Plaintiff had no interest in adhering to Quicken Loans' expectations or accepting constructive feedback provided to her. Consequently, Schiefer recommended termination, and plaintiff's employment was terminated on October 19, 2018. (Ex. I.)

## LAW AND ARGUMENT

### I.  Standard of review.

Motions for summary judgment under Fed.R.Civ.P. 56(c) presume the absence of a genuine issue of material fact for trial.  Summary judgment is appropriate where the materials in the record, including depositions, demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In this case, plaintiff cannot meet her burden of proof or offer anything other than her own subjective beliefs over a business decision and, perhaps, hurt feelings, both of which are insufficient to create a genuine issue of material fact of whether discrimination occurred.

### II.  Quicken Loans did not discriminate against plaintiff.

Plaintiff alleges race (African American) and gender (female) discrimination under Title VII and Elliott-Larsen and age discrimination (age 28) under Elliott-Larsen.  Plaintiff does not claim, nor do the facts support, any direct evidence of discrimination. Plaintiff admits that no one ever made any overtly discriminatory comment to her. (Ex. B 119:12-17.)

A plaintiff may establish a *prima facie* case of disparate treatment with circumstantial evidence by showing she: (1) is a member of a protected class; (2) was subjected to an adverse employment action; (3) was qualified for the job; and (4) was treated differently than similarly situated employees for the same or similar

7

conduct or replaced by someone outside the protected class. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004); *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004).[1] If a plaintiff establishes her *prima facie* case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the employment action. *Humenny*, 390 F.3d at 906.   If the defendant satisfies this burden, "the plaintiff must then produce evidence that the defendant's proffered reason is a pretext for discrimination." *Id.*   Plaintiff cannot establish she was subject to an adverse action due to her gender, race, or age and she has not identified any similarly situated co-workers who were treated more favorably. Moreover, even if she could, plaintiff cannot establish that Quicken Loans' legitimate nondiscriminatory reasons for her termination were a pretext for ***any*** type of discrimination.

### A.    Plaintiff cannot establish a race discrimination claim.

Plaintiff's race claims boil down to subjective feelings that do not satisfy her burden. She cannot show that she was subject to any adverse action or treated differently because of her race. Moreover, plaintiff was not replaced by someone

---

[1] "Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Humenny*, 390 F.3d at 906. Therefore, both Title VII and Elliot-Larsen claims will be addressed simultaneously.

outside of her protected class and has not identified anyone who was similarly situated to her and treated more favorably.

To substantiate her race claims, plaintiff described a disagreement with a teammate who ended the conversation by stating "I guess we were just raised differently." Plaintiff additionally claims that three team relations specialists discriminated against her when they were purportedly dismissive of her reporting her differences with Schiefer. Plaintiff testified: "I feel like my pain was ignored, which happens to black people all the time. All the time." She explained further,

> . . . it was how I felt that [The Pulse] handled the situation that I've seen them make more strides for people who didn't look like me.
> Q   Do you know who those people were?
> A   Not off the top of my head, no. I don't remember. (Ex. B 83:12-17.)

Plaintiff alleges that Schiefer discriminated against her and treated white females more favorably despite Schiefer herself being African American. Plaintiff testified to the basis as:

> [It was how Schiefer] spoke about Elena and Sara and anyone else that was also white. . . I mean, it was just more of how she was talking to them, how she handled them gently and me was a little bit more firm. It's a passive aggressive behavior, more so than the words. And I can only imagine it's because of my race. What else could it be? (Ex. B 137:11-25.)

Most of plaintiff's testimony is based on nothing but "rumors, conclusory allegations and subjective beliefs" which are "wholly insufficient evidence to

9

establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).  Plaintiff further fails to identify any similarly situated individual who was treated more favorably than her or to allege that her replacement was outside of her protected classes. To the contrary, Quicken Loans replaced plaintiff's position with Alecia Jewell Bayi. Ms. Bayi is an African American female under the age of 40. As such, it is incredible to believe that Quicken Loans or Schiefer terminated plaintiff based on her race, sex, or age, only to then hire another individual with ***all*** of the same protected traits.

Moreover, the statement "I guess we were just raised differently" has no overt discriminatory connotation and the team member who made the statement had no supervisory capacity or ability to make decisions related to plaintiff's employment. Plaintiff's subjective belief that The Pulse dismissed her complaints is not accurate or sufficient to prove an adverse action or to demonstrate that anyone was treated more favorably than her. The reality is that plaintiff's statements were not dismissed by The Pulse. Rather, plaintiff admits that The Pulse met with her multiple times to hear her concerns and work toward solutions; setting up a meeting with both her and Schiefer to mediate their challenges. (Ex. B 81:8-14.) The Pulse also worked with Schiefer to put a mentoring plan in place and provide plaintiff with a flexible work schedule to identify a position in which she may be happier. Her reports to The Pulse were anything but dismissed.

10

Finally, plaintiff's testimony that two white females, in different roles than her, were "handled gently" as compared to plaintiff being "handled a little bit more firm" is wholly uncorroborated and, therefore, insufficient to establish that plaintiff was treated less favorably even if the individuals were similarly situated—which they are not.[2] Plaintiff's *prima facie* claim resultingly fails because she was not replaced by an individual outside of her protected class, she cannot prove any adverse action based on her race, and failed to identify any similarly situated team member who was treated more favorably.

### B.     Plaintiff cannot establish a gender discrimination claim.

Plaintiff's gender discrimination claims are riddled with inconsistencies and based on factual inaccuracies that do not amount to a colorable claim. Plaintiff cannot demonstrate that she was subjected to an adverse action related to her gender or that similarly situated men were treated more favorably. Further, and as stated above, plaintiff was supervised (and terminated) by a young African American female and she was also replaced by a young African American female.

Initially, plaintiff testified that she was "very hesitant" to say that Schiefer discriminated against her based on sex because "Bridget is very big on [sic] pushing women up inside of I.T." and later testifying, "[n]o. I don't -- no, I don't

---

[2] Alena Rodriguez and Sara Walker both held the position of software developer.

11

know. I don't know why. I'm basing assumptions. Do I believe it's because of my sex? I could see that. . .yeah, maybe. . . I'm just guessing, right? I'm just being facetious a little bit." (Ex. B 65:9-11, 64:10-21.) Then again later, when asked, "with respect to your sex, do you believe Ms. Schiefer discriminated against you based on your sex?" She answered, "yeah. . . in dealing with me and constantly not taking into consideration of my needs and not being heard. I feel like because of my sex and who I am, it was just dismissed." (Ex. B 87:1-16.)

Plaintiff also described a team meeting where she felt undermined by her male colleagues:

> it was my job to basically ask for status updates. . . .So we hold these meetings in which we go around the table . . . and say where we are in different progress. . . And this guy, Chris that I can't remember his last name, he -- the way he responded to me was very rude. And he just was very short, even though everyone gave these really detailed answers. So when I asked him for more information, everyone in the room, they were like taken back. They were like oh, like that was literally the thing in the room. And in my mind, I was like, why that reaction? But then Joe Brach, who was like the leader, I guess, of that virtual team, when he said literally the same exact thing as me and, like, reiterated what I was trying to say, it was just glossed over, like oh, okay. (Ex. B 75:14-16.)

Plaintiff has not met her burden with these threadbare allegations. Plaintiff's gender claims rest on "a guy, Chris" who she perceived to be "short" and "rude." Plaintiff contrasts this with the way her team leader Joe Brach was treated when he reiterated her question. Plaintiff's allegations do not evidence more favorable

12

treatment, and Brach is not similarly situated to plaintiff given his position as team leader. "To be deemed similarly situated, the individuals with whom the plaintiff seeks to compare his treatment must have been the same in all relevant aspects." *Bobo v. United Parcel Service*, 665 F.3d 741, 751 (6th Cir. 2012). Brach, the director over the entire team, with entirely different responsibilities and job requirements, is not similarly situated. Moreover, plaintiff cannot establish that any similarly situated male team member was treated more favorably. In fact, plaintiff testified that during her tenure, a female software developer was placed on the team and "she was welcomed with open arms" and the team was "championing her." [3] (Ex. B 95:7-96:1.) Plaintiff testified to positive treatment of female team members:  her team leader mentored her and empowered women within IT, and the men on her team championed other women on the team. There is no evidence of gender discrimination or animus.  Plaintiff's gender discrimination claim must be dismissed.

### C.    Plaintiff cannot establish an age discrimination claim.

Plaintiff's age discrimination claim fails for the same reasons as her race and gender claims. Like plaintiff's first two claims, her age discrimination claim under

---

[3] Later in her deposition, she retracted this statement saying that Elena was also treated differently as a female but that she ". . .believe[d] it was a bit, bit more strong for me because of who I am, when you look at my black face." (Ex. B 130:7-9.)

Elliott-Larsen is analyzed under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff cannot show that she was subjected to an adverse employment decision based on her age, that she was replaced by someone outside the protected class, or that she was treated differently than similarly situated non-protected team members.

Plaintiff testified that her age discrimination claim is based on Schiefer "making assumptions" about what she "[does] and does not want." (Ex. B 150:19-25.) Plaintiff explained:

> [Schiefer was] [a]lmost parenting me. Constantly assuming that I don't want to be where I am and trying to tell me the path that I should take on a regular basis. Not allowing me to be my own person. Yeah, that's around my age. (Ex. B 150:19-25.)

She testified further:

> I have no experience in business analyst and I liked it. . . So why question me? She wasn't questioning anyone else. Why do you believe I'm unsure of myself and what I want? (Ex. B 151:5-10.)

The foregoing, as well as plaintiff's conclusory allegation of feeling dismissed on a team of experienced software engineers, comprise the ***entirety*** of her purported evidence of age discrimination. These statements simply reflect that she was the newest member on the team in a role in which she was struggling and had zero experience. Schiefer, with the assistance of The Pulse, mentored and coached plaintiff.  But plaintiff is again inconsistent on this aid.  At one point

14

during her deposition, plaintiff claims Schiefer "mothered" her and at another saying Schiefer was "constantly not taking into consideration of my needs and not being heard. . . I was just dismissed." (Ex. B 87:1-16.) Furthermore, plaintiff does not point to any specific individuals older than her who were treated more favorably than her. Notably, and relevant to all of plaintiff's claims—she cannot prove she was replaced by an individual outside of any of her protected classes.

### D.    Quicken    Loans    terminated    plaintiff    for    legitimate nondiscriminatory reasons.

Even if plaintiff could establish her *prima facie* case for **any** of her claims (which she cannot) the burden shifts to defendant to provide a legitimate nondiscriminatory reason for her termination. *Humenny,* 390 F.3d at 906.  Here, as outlined above and as is detailed throughout plaintiff's personnel file, she exhibited performance issues, disruptive behavior, and inconsistent attendance.

Despite coaching and mentoring, plaintiff struggled to prioritize her work and accomplish tasks. Even when Schiefer attributed this to plaintiff being unhappy in her current role and allowed her to dedicate 50% of her time to finding a role in which she would be happier, she failed to do so. Schiefer tried to mentor plaintiff, and when plaintiff was unsuccessful, Schiefer assigned plaintiff a different mentor—who plaintiff refused to meet with regularly. Plaintiff's disruptive behavior made working with her difficult. She routinely demanded

15

answers and communicated abrasively with team members. (Exs. D, G.) Because a business analyst's role requires being a communication liaison between groups, her demeanor inhibited her success in her role. Coupled with her attendance—arriving late and leaving early without notice—plaintiff's performance was unsatisfactory. The Pulse was involved for months and provided her progressive discipline and coaching opportunities. However, her performance and disposition did not improve, and Schiefer decided it was time to separate plaintiff. Plaintiff was terminated for legitimate business reasons and her discrimination claims should be dismissed.

     **E.**    **Plaintiff cannot prove her hostile work environment claim.**

Plaintiff cannot establish a hostile work environment under Title VII or Elliot-Larsen as a matter of law. To do so, she must show (1) she was a member of a protected class; (2) she was subject to unwelcomed harassment; (3) the harassment was based on the protected class; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) Quicken Loans was liable for the harassing conduct. *Nicholson v. City of Clarksville*, 530 F. App'x 434, 442 (6th

16

Cir. 2013).[4] In essence, plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). A non-exhaustive list of factors for the court to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Plaintiff testified that no one ever made any discriminatory remarks to her. However, she felt as though she was "dismissed." (Ex. B 83:12-17.) Plaintiff has not claimed that she felt threatened or harassed, nor that her teammate's dismissal was severe and pervasive.  For example, plaintiff testified that Matt Colf allegedly discriminated against her based on age and gender but that she "never had a bad relationship with him" and that the two had gone to lunch together since her termination. (Ex. B 104:1-14.) Plaintiff claimed that Steve Kluck discriminated against her on the basis of her age, gender, and race but that she made "some really

---

4 Again, the evidentiary standards for Title VII and Elliot-Larsen harassment claims are the same and these claims are addressed together. *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007).

Bodman_16871114_2

good strides with" him and the team and felt like their communication "really grew" over the years. (Ex. B 41:13-42:5.)  Plaintiff identified Tyler Underwood as a purveyor of discrimination, but identifies no specific conduct and admits that he had no authority over her employment and was not employed at the time of her termination. Igor Ostaptchenko, a senior software developer on her team, endorsed her on LinkedIn and has been in friendly communication with her since she was terminated. (Ex. B 21:3-22:5.) Plaintiff also testified that she has received business opportunities from Quicken Loans team members since leaving and stated further that Darnell McMillen, a teammate, helped advise her on a project she was working on since her termination.  (Ex. B 22:6-7, 22:18.) Again, plaintiff testified that she had a positive relationship with Schiefer and the rest of her team.

### F.    Quicken Loans did not retaliate against plaintiff.

To establish a *prima facie* case of retaliation under Title VII or Elliot-Larsen, plaintiff must establish that (1) she engaged in protected activity; (2) the exercise of her rights was known to Quicken Loans; (3) Quicken Loans took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Nguyen v. City*

18

*of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).[5] The burden then shifts to Quicken Loans to articulate a legitimate, non-retaliatory reason for the adverse action, which plaintiff must demonstrate is a mere pretext. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

Plaintiff alleges that she was retaliated against because of her complaints to The Pulse. Critically, as ***she did not complain of unlawful discrimination or harassment*** to The Pulse, she did not engage in protected activity to satisfy prong (1) above.  Additionally, plaintiff cannot show any causal connection between her complaints to The Pulse and her ultimate termination. "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (citing *Little v. BP Expl. & Oil Co.,* 265 F.3d 357, 365 (6th Cir. 2001)). Plaintiff cannot prove either. As explained above more fully, The Pulse worked with plaintiff, set her up with a mentor, gave her feedback, spoke with her supervisors, and took her claims seriously. Plaintiff first went to The Pulse to discuss her verbal warning on May 18, 2018. Plaintiff was not terminated until October 2018 after an additional

---

[5] "Once again, the Elliot-Larsen analysis is identical to the Title VII analysis." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012). Therefore, both Title VII and Elliot-Larsen claims will be addressed simultaneously.

written warning and several coaching sessions. Finally, as explained above, plaintiff was not retaliated against. She was terminated for legitimate business reasons. The retaliation claim must be dismissed.

### G.   Plaintiff's public policy claim is preempted by statute and therefore must be dismissed.

Plaintiff's public policy claim is superseded by her nine other causes of action for relief under Title VII and Elliot-Larsen. The alleged public policy rights, according to plaintiff's Complaint are found in the "explicit language" in Elliot-Larsen and Title VII. ECF No. 1 ¶170. The purpose of a public policy based claim is to prevent employee termination contrary to public policy when no other private cause of action could enforce the public policy at issue.  *See Vagts v. Perry Drug Stores*, 204 Mich. App. 481, 485; 516 N.W.2d 102 (1994) ("a public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue"); *see also Kimmelman v. Heather Downs Mgmt. Ltd.*, 278 Mich. App. 569, 573; 753 N.W.2d 265 (2008) (where there exists a statute explicitly proscribing a particular adverse employment action, it is the exclusive remedy, and no other 'public policy' claim can be maintained). Here, Title VII and Elliot Larsen provide plaintiff with recourse.  The claim for discharge based on public policy must be dismissed.

Bodman_16871114_2

## CONCLUSION

For all of the foregoing reasons, Quicken Loans respectfully requests summary judgment on all claims asserted against it by Plaintiff Crystal Robinson and the dismissal of her case with prejudice.

Respectfully submitted,

BODMAN PLC

By:   /s Michelle L. Kolkmeyer
John C. Cashen (P31603)
Michelle L. Kolkmeyer (P81355)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
jcashen@bodmanlaw.com
mkolkmeyer@bodmanlaw.com
*Attorneys for Defendant*

August 10, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, I filed the foregoing paper using the CMECF efiling system which served a copy on all counsel of record.

/s/ Michelle  L. Kolkmeyer
Michelle L. Kolkmeyer (P81355)

21

Bodman_16871114_2